## UNITED STATES DISTRICT COURT
## DISTRICT OF PUERTO RICO

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, **Luis Polo**, being duly sworn, do hereby depose and state the following:

1. I am a Border Patrol Agent with the United States Border Patrol and have been so employed since March 27, 2006. As a Border Patrol Agent, I have gained experience in conducting investigations related to the illegal entry of aliens into United States. I attended the Federal Law Enforcement Training Center at Artesia, New Mexico, where I received training for the purpose of accomplishing my Border Patrol duties, which includes training in immigration related law and matters. Furthermore, I also receive training on a continuing basis for the purpose of maintaining my proficiency pertaining to Border Patrol work.

2. Investigation reveals that, on or about Wednesday, August 27, 2025, **Alain LUGO-ROJAS** was encountered at sea, in United States territorial waters attempting to enter and/or to re-enter the United States illegally at sea at or near Aguadilla, Puerto Rico. Therefore, this Affidavit is made in support of a Criminal Complaint against **Alain LUGO-ROJAS** based on violation of **Title 8, *United States Code*, Section 132(a)&(b)(2) – Attempting to re-enter the United States subsequent to an aggravated felony conviction.**

3. I make this affidavit based on my own personal knowledge and on oral and written reports by other federal, state, and/or local law enforcement agents and officers that investigated this matter. This affidavit does not contain all the information derived from this investigation only that which is sufficient to demonstrate probable cause to believe that a crime has been committed.

## PROBABLE CAUSE

4. On or about Tuesday, August 26, 2025, at approximately 09:16p.m., United States Border Patrol (USBP) Ramey Sector Dispatch received information from U.S. Customs & Border Protection (CBP) Air & Marine Operations (AMO) air asset indicating about the detection, of a Surface Target of Interest (STOI) about two (02) nautical miles from Rompeolas Beach in Aguadilla, Puerto Rico,

5. The STOI was described as a single-engine boat, twenty to twenty-five (20-25) feet in length, operating with its lights out and carrying approximately ten (10) people onboard.

6. The STOI was observed heading westbound and making frequent stops.

7. CBP-AMO Marine Unit M-815 was dispatched to the area in response. In addition, Puerto Rico Police Department (PRPD) Marine Unit (FURA) from Añasco was also notified and was responding to assist.

8. A subsequent position update was provided to report the vessel's new location noting that the vessel was dead in the water (DIW). Once the vessel heading was confirmed, CBP-Marine Interdiction Agents (MIA) / Marine Patrol Units obtained visual of the vessel and proceeded to approach for inspection.

9. During the approach, CBP-MIA described the vessel as a yawl style homemade vessel, with one outboard engine.

10. CBP-MIA activated their vessel's emergency lights and sirens and initiated an attempt to stop the go-fast yawl type vessel.

11. CBP-MIA final interdiction took place at approximately three (03) nautical miles west of Rompeolas Beach, at or near Aguadilla, Puerto Rico.

12. Upon interception CBP-AMO marine unit found a total of eight (08) subjects

onboard the vessel. Three (03) male subjects from Venezuela, one (01 subject from Colombia and four (04) male subjects from the Dominican Republic.

13. USBP took custody of the intercepted eight (08) subjects.

14. Border Patrol Agents (BPA) identified themselves as immigration officers and proceeded to interview all subjects, including **LUGO-ROJAS**.

15. BPAs questioned all subjects, including **LUGO-ROJAS**, as to their citizenship and nationality.

16. All subjects, including **LUGO-ROJAS**, freely and voluntarily admitted to being unlawfully present in the United States.

17. **LUGO-ROJAS** admitted being citizen & national of Venezuela.

18. All subjects, including **LUGO-ROJAS**, were arrested and transported to U.S. Border Patrol Ramey Station in Aguadilla, Puerto Rico for further investigation, processing and removal proceedings.

19. Once at the Ramey Station, all subjects, including **LUGO-ROJAS** photograph & fingerprints, were taken and entered to different law enforcement database systems. Record checks revealed prior immigration & criminal history.

20. As to **LUGO-ROJAS's** immigration & criminal history:

    a) On October 07, 2016, **LUGO-ROJAS** illegally entered the United States at or near San Juan, Puerto Rico. **LUGO-ROJAS** was one of four persons encountered by the United States Coast Guard (USCG) in international waters on a motorboat without markings. On the vessel was found thirty to thirty-five (30-35) bales of contraband onboard. The four persons, including **LUGO-ROJAS** were transferred to the USCG cutter and transferred to San Juan,

        Puerto Rico to the Drug Enforcement Administration (DEA) for prosecution.

b)     On April 04, 2019, **LUGO-ROJAS** pleaded guilty as charged for Title 46 U.S.C. 70503 – Conspiracy to possess with intent to distribute controlled substance (cocaine) on board a vessel subject to the jurisdiction of the USA.

c)     On December 10, 2019, **LUGO-ROJAS** was convicted and sentenced to one hundred and eight (108) months imprisonment; with an additional supervised release term of five (05) years. This is a conviction for an aggravated felony pursuant to 8 U.S.C. 1101(a)(43)(B).

d)     On March 21, 2024, ~~ACOSTA-BASORA~~ [Lugo-Rojas] was ordered removed from the United States by an Immigration Judge.

e)     On July 12, 2024, **LUGO-ROJAS** was officially & physically removed from the United States to Venezuela from the Port of Miami, Florida.

21.     Border Patrol Agents advised **LUGO-ROJAS** of his right to legal representation and his right to speak with the Consular Officer of his native country, Venezuela.

22.     **LUGO-ROJAS** illegally attempted to enter and / or to re-enter the United States at a place other than a designated Port of Entry.

23.     **LUGO-ROJAS** was found onboard a vessel along with two convicted aggravated felons, in addition to him.

24.     **LUGO-ROJAS** is a national and citizen of Venezuela who does not possess any immigration documents allowing him to enter and/or remain in the United States legally, to include but not limited, the lack of express consent from the Attorney General of the United States, or his successor, the Secretary of the Department of Homeland Security, to reapply for admission into the United States. Furthermore, ~~ACOSTA-BASORA~~ [Lugo-Rojas] was not inspected,

admitted, or paroled into the United States by an Officer of the Bureau of Customs and Border Protection.

25. **LUGO-ROJAS** does not have any petitions pending with the Bureau of Citizenship & Immigration Services.

26. Based upon my training, experience, and participation in other investigations, and based on the facts revealed in this investigation, I believe that sufficient probable cause exists to demonstrate the commission of a violation of federal law by the above-mentioned subject, to wit, a violation of **Title 8, *United States Code*, Section 1326(a) & (b)(2) – Attempting to re-enter the United States subsequent to an aggravated felony conviction.**

Luis Polo
Border Patrol Agent

Subscribed and Sworn pursuant to FRCP 4.1 at 2:06 PM by telephone, this 29th day of August 2025.

Honorable Giselle López-Soler
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF PUERTO RICO

5